Good morning, Your Honors. Richard Williams on behalf of California Spine & Neurosurgery. Good morning. You may proceed. Thank you, Your Honor. This is a relatively simple case in the sense that what California Spine is asking for is that the court affirm existing Ninth Circuit law as stated in the Spina Dex and Harlech cases that are the underlying grounding for both briefs, and that the court also affirm that the regulations that govern ERISA be applied in the context of this case because the factual allegations of the complaint establish a grounding for application of the regulations. We feel that the district court erred in both respects. It failed to apply Spina Dex and Harlech, and it failed to apply the regulations. In a third error, which we think probably requires a remand and a right to amend, the district court also found as a matter of fact that the reason for the denial pre-litigation in the district court was not the anti-assignment clause. And we don't think that there is any basis for that. But even if that was one reason, the regulations require that all reasons for denial be the basis of notification. And the Harlech and Spina Dex decisions both adopt that principle. Harlech says simply that an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and then give that reason for the first time when the claimant challenges an ERISA benefits denial in court. And that's exactly what happened here. The anti-assignment clause was held in reserve, and it was only raised by Blue Cross when the claimant chose to pursue litigation in this court. What is your response to Blue Cross's position that the assertion of this, I'll call it defense, is not a reason for denial of the claim, but as a couple of our unpublished cases say, it's only a litigation bar or litigation defense. And it really doesn't arise until litigation is instituted. I have two responses to that, Your Honor. First is neither of the unpublished decisions gives any reason why that distinction was being drawn, or really gives any grounding as to what that distinction actually consists of. It certainly was a substantive defense in the sense that anti-assignment was relied upon by the district court as the basis for denial. And the fact that the denial took place in litigation only and didn't take place, or at least wasn't disclosed in pre-litigation proceedings, doesn't mean that it wasn't a substantive defense. The only thing it means is that it was a substantive defense, a basis for denial that wasn't asserted in a timely manner. The regulations require that all reason or reasons, multiple, be disclosed pre-litigation, not just the one reason that the insurance company chose to disclose. So we think that it simply is a distinction without a difference to say that it's a litigation defense as opposed to a denial on substantive grounds. The anti-assignment clause is a denial on substantive grounds. And we would argue also that the regulations, the ERISA regulations require pre-litigation notice to the claimant and the patient of matters that are expected to be raised in litigation. Not just matters that the insurance company puts forth pre-litigation, but all matters that are expected to be raised in litigation. And we would argue that this is a matter of that sort, so that it's a distinction without a difference. I would go on to argue also that Spina Dex breaks this case down even further than Harlech, in that it specifically states that an anti-assignment clause can be waived if the claims administrator knew or should have known of the existence of the clause. In this case, we believe that the allegations of the complaint clearly establish that the insurance company knew or should have known that the claim was being pursued by the claimant on the basis of an assignment. We find two bodies of evidence alleged in the complaint. First is the pre-performance of services. The claimant calls the insurance company for verification. In the call, they announced to the claims representative for the insurance company that they are pursuing the claim as an out-of-network provider. And they ask if they are eligible to receive benefits. The claimant says yes. Secondarily, when the claim is submitted, it's submitted on a form 1500 claim form, which has two boxes that are indicated as yes responses. And those two boxes, the first one, box 13, says that the patient has granted rights to the claimant, the provider. And the second, box 27, says that the provider has accepted the assignment. So we have the granting of the assignment in box 13, the acceptance of the assignment in box 27, which puts the insurance company on notice that the claim is being pursued on the basis of an assignment. And under Spina Dex, if the claim is being pursued on the basis of an assignment, that anti-assignment defense must be disclosed pre-litigation. Neither of the unpublished cases cited by the Blue Cross is really directly relevant or directly on point. And so the attempt by the district court to try and harmonize the decision, to use their term, simply is not a proper exercise. Because in the Brand case, the evidence was that the claimant did not give notice and that the plan in that case did not have notice that the claim was being pursued pursuant to an assignment. So Brand is not on point because here we say they did have notice. Similarly, with Eden, the Spina Dex decision appears not even to have been raised in the Eden decision. And therefore, it was not a part of the appeal in that case. So again, there was no refutation in Eden of the point that we say exists in the present case. Which is that the insurance company knew or should have known of the anti-assignment clause and they had a duty to raise it in the first instance. Counsel, I want to ask a clarifying question about the pre-surgery phone call that you've talked about that your client made to confirm benefits. My understanding is that your argument is that that phone call was made, benefits were confirmed, but there wasn't anything expressed in that conversation where Blue Cross said, yes, we will pay you as an assignee. Rather, you're making an inferential argument because they had reason to know that your client was an assignee. Am I correct about that? Or are you making an express representation argument? No, we're not alleging that they made an express representation about anti-assignment. The allegation in the complaint was that they advised the claimant that the claimant was eligible to receive benefits. We argue that that is a statement of concealment because they disclosed a partial truth. The claimant was eligible to receive benefits. That is a partial truth. But what they neglected to say was the additional information that was necessary to make that partial truth not misleading. And the additional information that they failed to disclose was that they had an anti-assignment clause and they intended to assert it in the event that the claimant pursued litigation based on its supposed eligibility to receive benefits. So could the anti-assignment clause, if it exists and it's enforceable and it applies in this context, could be a basis for just saying at the point of that conversation, no, there's no benefits here. Is that right? I'm not sure I heard that question correctly. I guess I'm, as Judge Tashima was asking you a minute ago about, you know, why isn't this just a litigation defense as opposed to something that should be raised during the claim processing? I mean, is anti-assignment something you can even raise in the claim processing context? Or does it only apply if litigation is happening? We believe that there is an affirmative duty on the part of the claim administrator to raise the anti-assignment clause, to give notification of the anti-assignment clause, and to say that they intend to assert it if in fact that is their posture at the time of the communication. I understand that. I guess I'm, could Blue Cross say we're not paying, we're not paying this claim because we have an anti-assignment clause? Before any litigation happens, could they say that? Could they say we're not paying and the reason why is the anti-assignment clause? They certainly could say that. And not only could they say that, they should have said that. And it isn't, there isn't just one reason necessarily that they have to disclose. If they have, if they have five reasons, they are required to disclose all five reasons in the pre-litigation communication process. And they're required under the regulations to disclose not just the reasons, but also the grounding in the plan that gives rise to the claims. Blue Cross is a fiduciary in this circumstance. That's well established under the law. And neither the claimant nor the patient are fiduciaries. They don't have the same level of duty that Blue Cross has. And Blue Cross is the party that is familiar with the plan and has the plan and that is supposedly supposed to communicate what is in the plan to the claimant and to its patient. All of that is essential to ERISA law because otherwise the claimant would be sandbagged, to use the term that Harlech used in its analysis. And the claimant and the patient would be sandbagged to a circumstance where they are asserting litigation without knowing of all the bases for denial that the insurance company intends to rely upon. And that's exactly the kind of gamesmanship that waiver law is designed to protect against. Do you want to reserve any for rebuttal? I'll reserve the rest of my time for rebuttal. Thank you. Mr. Fuller? Good morning and may it please the court. You've got Chad Fuller on behalf of Blue Cross of California. And your honors, the district court got it right. The order should be sustained for three basic reasons. One, the anti-assignment was not used as a basis for the denial. The denial was because the bill charges exceeded. The question is, though, why wasn't it used? It could have been used, right? Well, your honor, there was a partial payment here. And if what the appellants are saying is true, it would make no sense for a partial payment to have occurred and a partial payment did occur. And so, no. In the analysis in the- Well, wait a minute now. What are you telling us? The partial payment should be interpreted as a waiver of the anti-assignment clause? No, no, your honor. Well, what does a partial payment mean then? Well, if I heard correctly- In terms of, you know, in terms of application of the assignment clause. Yes. If there was an anti-assignment clause, and that discussion occurred earlier with Judge Hunsaker, you'd pay nothing. I owe you nothing. There's an anti-assignment provision. I owe you nothing. Right? It's complete defense. So, the idea- But as you say, Blue Cross paid something on the claim, 90 bucks or something like that. So, what is that, a waiver of the anti-assignment clause? Not at all. No, no. Well, what is it then? It demonstrates that the anti-assignment- Did the payment notation say, we're making a partial payment on the claim, but we're not waiving our rights under the anti-assignment clause or something like that? No, there was no waiver here, your honor. I'm making a different point. I'm saying that the anti-assignment provision wasn't the basis for denial. The basis for denial was that the bill charges exceeded the maximum allowed under the policy. And that was fully communicated- I know you're saying that, but what I'm asking is whether making that payment in light of the anti-assignment clause has other consequences. Is that payment itself a waiver? No, no, your honor. It demonstrates that the anti-assignment- Spine is an S&E, right? And you know they're an S&E, and you're making payment to an S&E, right? The payment was made to the member. The payment was made to the member? Yes. It was not paid to the S&E? No. Is that right? Is that right? That's my understanding, and that's the policy. They're not a network provider, your honor. We pay the member. All right. You have a record citation you can give me for that that shows the payment was to the member? I don't, your honor. You don't have it offhand? All right, well, I'll try to look at it. So I don't want to hold you up further. Go ahead with your argument. Well, I appreciate it because your questions raised a lot of what my opening or my intro is going to be anyway. Did we get a purported assignment? Yes. But does that purported assignment shift any of the burdens or create any duties on Blue Cross? No, it doesn't. In order for us to waiver, we have to have an intentional relinquishment of a known right, okay? The fact I could, your honor, I could send the NFL, you know, an e-mail telling them I'm their next quarterback. I'm the next quarterback of the NFL. That doesn't make it so. And if the NFL doesn't respond to my e-mail, I can't then go, well, you waived the right to say that I'm not the next quarterback. I'm not sure that's a good analogy. I mean, at the time that they make the phone call to confirm benefits, could Blue Cross have said, no, an anti-assignment clause applies here and there are no benefits? Well, there are benefits. The anti-assignment provision is a litigation defense, your honor. It would be the same as if they were to say, and there could be a statute of limitations defense, and you could have an unclean hands defense. There could be a defense. There could be a number of litigation defenses. So are you saying, I mean, well, I want to understand that. I mean, are you saying that you would never raise the assignment clause as a basis for denial at the claim stage because it only applies in a litigation context? Is that your argument? That's correct, your honor. That's correct. It's not a basis of denial of the claim. The denial of the claim is medical necessity, whether it was experimental, whether in this case it exceeded the bill charges. Those are the basis for denial. The anti-assignment is the litigation which strips a risk of jurisdiction to bring a claim. That's precisely what it's for. There's nothing about this anti-assignment clause that specifically says it applies to litigation rights, right? It just says benefits. It just says can't assign benefits. That's correct. That's correct. It says you can't assign your benefits. It doesn't say you can't assign your litigation rights. It does not say that. Correct. It says you cannot sign your benefits. And the import of that is not a basis for why this claim was denied. And, in fact, when you look at the appellant, they stated in their complaint the basis of paragraph 11 of their complaint, which is at, Your Honor, ER 123 is the complaint. And they say the basis for denial that Anthem denied the claim was because the bill charges exceeded the maximum allowed under the plan. I mean, I think that's clear. Nobody's arguing that. It's just what do we do with the assignment issue that was lurking in the background? And I guess your argument is it wasn't ever lurking in the background until there's litigation, that you couldn't and wouldn't have ever asserted it until a lawsuit gets filed. That's correct, Your Honor. And listen, when appellant talks about on the preauthorization call somehow saying there's an anti-assignment provision so there's no coverage, that's a non sequitur. There is coverage. There's coverage for the member. This anti-assignment provision prevents in the event of litigation. We don't know. How in the world would anybody know who's going to sue who a year from now, three years from now, or whenever? And that if somehow every litigation defense wasn't disclosed, okay, on the preauthorization call, that that somehow resulted in a waiver of that. It wasn't even asked. And even if it was asked and got wrong under Gabriel, we could have said there was and there wasn't. And it still wouldn't change the fundamental provisions of these plan documents. Well, Mr. Fuller, Mr. Fuller, I think your argument, I mean, you're arguing against Spindex because Spindex says that, you know, you can't sort of sandbag, right, and hold back a defense and bring it up for the first time in litigation. You don't think that's a proper reading of Spindex? I don't. I don't, Your Honor. Interestingly, in Spindex, the assignment was permissive, okay? So it's different than the assignment that we have here. Because in Spindex, they could have assigned these rights. It was permissive. You had to get the plan sponsor to agree to it. In that case, it was discount hires. But there was a situation where the court acknowledged that the plans, if you wanted to assign all of the rights, for instance, in litigation, then the plan sponsor, discount hires, had to approve of it, okay? And in that case, United was the administrator, okay? And Spindex said no. The fact of the matter is, in this case, the anti-assignment provision isn't permissive. It's just a straight and you cannot assign these claims. So there's no room to say, well, I didn't know. You know, it might have been permissive. And really, I think Judge Hamilton's read of Spindex was correct in the context that, you know, there's no evidence. Like when you look at Harlech, where there were letters that were saying, you know, the denial was based because the claims are not covered. And then all of a sudden they get in and they say, well, wait a minute, they're not medically necessary. So there was these conflicting messages. Here there is no conflicting messages that have been given whatsoever. The claim was denied for the reasons stated. And when sued upon, the anti-assignment provision properly appeared as a bar to ERISA jurisdiction. You may disagree that this is this case, but if an insurer knows at the claim stage that the person who's going to try to recover on a claim is an assignee and knows that there is an anti-assignment clause, why shouldn't the insurer assert that at the claim stage? Assert it when, Your Honor? At the claim stage, before litigation. If you know, I'm asking you to assume facts. Yes. If you know at that claim stage, pre-litigation, that the only party coming after recovering under the policy is an assignee, why shouldn't you have to assert an anti-assignment clause if you think you have those rights? Well, I would say that it's not the basis for denial. In here, there wasn't a complete denial. There was a partial payment. But it could be. I mean, I get that's not what the basis for denial that was asserted in this case. But if it could be, then why shouldn't it be asserted so that the issues are on the table? You know, Your Honor, I'd have to think about it. There could be a number of factors that inform that hypothetical question. I know in this case, that was not the case. You know, it feels more like, in some ways, like in order to invoke waiver that quickly or estoppel, you know, there'd have to be something more. There'd have to be some intentional relinquishment. Because these are ERISA documents, remember. And, you know, what the plaintiff is trying to do is just to come in, a stranger to this plan, who's not a signatory to the plan, and basically rewrite plan provisions. And if the waiver or estoppel could happen as quickly or as easily as the appellant suggests, then that's completely out of line, certainly with Gabriel. I mean, when you look at the facts of Gabriel, the things that were told to the appellant in that case were far, far different and far more, you know, real, for lack of a better word. I mean, they told him a bunch of different things. And even there, the court said, we're not going to find estoppel because you can't use estoppel to come in and rewrite the plan terms. So in this case, Your Honor, the partial payment, along with the basis for denial, was the reason. The anti-assignment provision, as Judge Hamilton recognized, was used as a litigation defense. And other courts have held that and saw that, too. They are unpublished. We understand that. But Eden and Brand, Tarzana, there's a brand-new case out of the Fifth Circuit, which apparently was the mecca for the ability to waive anti-assignment under the old Herman case. But this cell science case, which was decided in March, okay, very recently, said, listen, it wasn't the basis for denial, and it's a litigation defense. And that's in the Herman court. That's in the Fifth Circuit. And I submit to you that that's precisely right. Because there could be a number of litigation defenses that don't apply in the context or the analytical framework of the claims process. There could be a bunch of reasons that you could assert in litigation. And if the appellant's position were correct, you would have waived them all because you didn't tell them basically on the pre-authorization call. I didn't tell you that there might be a statute of limitations. I didn't tell you that I might come in with a fraud defense or unclean hands or an anti-assignment provision. There's a number of things that could affect your litigation posture that don't have anything to do with proper claims administration, Your Honors. I'll wrap up by saying that I really appreciate the opportunity to argue this. The claim was properly denied. I don't think any leave to amend would solve the problems associated with this, which is why Judge Hamilton denied leave to amend. I believe that the anti-assignment clause was properly asserted as a basis to our jurisdiction. Thank you. Thank you, Counsel. Thank you, Your Honor. I believe that Your Honor's question of why shouldn't they have asserted the anti-assignment clause in the pre-litigation stage, why shouldn't they have done that, is the relevant question here. It goes to the public policy point. By not asserting the anti-assignment clause in the pre-litigation stage, they've deprived both the member and the claimant of their right to fully analyze this claim pre-litigation and to make their decision about whether even to pursue litigation or how they should pursue litigation to make those kinds of decisions on the basis of full and fair information, which is exactly the purpose of the ERISA regulations that were breached here and is also exactly the purpose of Spinodex, where Spinodex says that if the claims administrator knew or should have known about the existence of an assignment and failed to raise the anti-assignment clause pre-litigation, the anti-assignment clause is way. That's what Spinodex holds and Spinodex is the controlling authority here. And here, I believe that I heard Counsel essentially acknowledge that they knew about the assignment pre-litigation and they ultimately did assert the assignment as the grounding for their denial. So why didn't they assert it in advance? The effect of not asserting in advance was to deprive the claimant and the patient of its right to figure out what to do on the basis of full information. Thank you very much, Your Honors. I appreciate having the opportunity to argue here today. Thank you, Counsel, for the argument. This case can be submitted.
judges: Tashima, Selna, Hunsaker